WIGGINTON, Judge.
Petitioner seeks review by common law certiorari of an order of taking rendered by the trial court in an eminent domain action. By its order the court found that petitioner had exceeded its delegated authority and was acting arbitrarily in its attempt to appropriate by this proceeding certain lands allegedly required by it for providing limited access to an interchange on an interstate highway being constructed by petitioner.
Although the challenged order is not one from which an interlocutory appeal will lie, since it relates to the issue of necessity for taking land sought to be appropriated by eminent domain we exercise our constitutional discretion and consent to hear and determine the petition now before us for consideration.[1]
Petitioner is in the process of constructing Interstate Highway 10 on a course generally eastward from Pensacola to Jacksonville. The route of the highway will intersect State Road 83, a north and south primary state road, at a point south of DeFuniak Springs. Petitioner has found it necessary and advisable to construct an interchange at the point of intersection between the two aforementioned highways. In this connection, what is referred to as a diamond-type intersection has been designed which will permit an interchange of traffic from and to each of the highways in question.
From the allegations of the complaint petitioner seeks to acquire certain strips of land adjacent to State Road 83 north and south of the interchange facility. The strips of land sought to be acquired lie beyond the end of entrance and exit tapers on Road 83 and are for the purpose of providing limited access to that road. Respondent landowners objected to the order of taking on the ground that the amount of land for limited access sought to be acquired was in excess of that which was reasonably necessary for the proper and safe construction of the interchange facility, and the attempt to acquire the excess above the amount needed constituted an arbitrary abuse of discretion which should be denied.
A full evidentiary hearing on the issue of necessity for the taking was held before the court at the conclusion of which the order of taking was rendered which is the subject of this review. By its order the court found that any extension of the limited access beyond 300 feet from the north end of the taper in the northwest quadrant of the interchange and beyond 300 feet south of the end of the taper in the southeast quadrant of the interchange adjacent to Road 83 constituted an arbitrary abuse of authority and was an unjustified attempt to appropriate respondents’ property for public purpose. The effect of the order is to find that no necessity has been established by petitioner for the taking of the full amount of the land sought for limited access purposes, and *259 to restrict the taking to the quantity set forth in the order.
At the hearing before the court there was introduced in evidence a copy of the resolution adopted by petitioner in which it certified to the necessity for acquiring the land described in the resolution (and in the petition for condemnation) for the purpose of constructing the interchange facility as a part of Interstate Highway 10. In Stap-lin, supra, in commenting upon the weight to be accorded the determination of an acquiring agency as to the necessity for appropriating private property for public use through the exercise of eminent domain, this court said:
“It appears to be the established law of this state that a public body vested by law with the power of eminent domain is granted a broad discretion in the selection of the particular property to be acquired, as well as the amount and the estate or interest therein which is necessary in order to accommodate the public purpose sought to be served. In making this determination, the acquiring authority may not only consider present demands, but also those which may be reasonably anticipated in the future. The discretion exercised in the discharge of these functions will not generally be interfered with by the courts in the absence of some element of fraud, bad faith, or gross abuse. It is equally well recognized, however, that an acquiring authority will not be permitted to take a greater quantity of property, or a greater interest or estate therein, than is necessary to serve the particular public use for which the property is being acquired.” [2]
This court’s decision in Staplin followed the general rule previously pronounced by the Supreme Court in Wilton v. St. Johns County[3] as follows:
“ * * * A large discretion is necessarily vested in those who are vested with the power, in determining what property, and how much, is necessary. To warrant a denial of the application, it should appear that what is sought is clearly an abuse of power on the part of the petitioner. It may be said to be a general rule that, unless a corporation exercising the power of eminent domain acts in bad faith or is guilty of oppression, its discretion in the selection of land will not be interfered with. ‘If the petitioner is acting in good faith and shows a reasonable necessity for the condemnation, in view of its present and future business, the application should be granted.’ Lewis’ Em. Dom. § 601; 20 C.J. 632-638.”
With the foregoing basic principles in mind, we turn to the evidence adduced before the court for the purpose of determining whether the act of petitioner in seeking to appropriate for limited access purposes the land sought to be acquired herein is motivated by fraud, bad faith, or gross abuse as referred to in Staplin, supra, or constitutes bad faith or oppression as set forth in Wilton, supra.[4] The proof required to demonstrate a necessity for the taking has been defined by the Supreme Court as follows:
“The necessity spoken of need not, according to the authorities we have examined and which we believe to be in the majority, be absolute, but only one that is reasonable and ‘such as would combine the greatest benefit to the public with the least inconvenience and expense to the condemning party’. 20 C.J. page 631.” [5]
*260 The only expert testimony adduced at the hearing on the issue of necessity was by two engineers presently in the employ of petitioner. Only one of these experts was qualified to give any credible or authoritative testimony concerning the design of the interchange in question and the necessity for acquiring the lands allegedly needed to functionalize the interchange and control vehicular traffic utilizing the two intersecting highways. This witness testified that the design of the interchange and the approaches to it on State Road 83 were influenced in large measure by highway safety factors. He stated that the design was in accordance with recognized engineering principles, and that all of the land described in the petition for condemnation was essential to a proper and safe construction of the interchange and the State Road 83 approaches to it on the north and south.
From the evidence it appears without dispute that the route of Interstate 10 traverses longitudinally a depression in the topography at the point where it intersects State Road 83. The area north and south of the intersection traversed by State Road 83 has a gradual upward slope to a crest several hundred feet distant. The speed limit on Road 83 north of the interchange is fifty miles an hour and south is sixty-five miles an hour. The engineering plans offered in evidence reveal that a crossover from west to east on State Road 83 through the median strip dividing the travel lanes is designed to be constructed at the crest of the hills both north and south of the interchange so that vehicular traffic entering State Road 83 from adjacent lands may cross directly to the opposite side of the road with the greatest degree of safety and without encumbering the ramps and bypasses forming a part of the interchange facility. The lands sought to be acquired for limited access purposes extends north of the interchange on State Road 83 to the point where the crossover is designed to be constructed at the crest of the hill on the north, and likewise extends south of the interchange to the point where the crossover is designed to be constructed at the crest of the hill on the south. The expert witness testified as to the reasons why such a design was necessary in order to maximize all known safety factors and minimize the hazards that would result if the crossovers were constructed closer to the interchange. The reasons advanced by this witness relating primarily to highway safety factors fully justify the need for acquiring the land essential to provide limited access up to the crossovers on the crest of the respective hills and are logical and consistent in every respect. The effect of the order of taking which reduces the amount of land petitioner is allowed to acquire in this proceeding for limited access purposes will require that petitioner amend its plans by adopting either one of two alternative courses. It could move the crossovers on State Road 83 closer to the interchange at a point on the upward slope of the hills to the north and south, thereby requiring motorists in some instances to cross several traffic lanes in order to enter their proper lane of travel. Such a plan would additionally create a problem of visibility for traffic approaching the intersection from the north and south, and would create an extremely dangerous traffic condition. As an alternative, if petitioner elected to not construct crossovers on State Road 83 north or south of the interchange, the absence of such facilities would require some of the vehicular traffic entering State Road 83 to negotiate the interchange by traversing its entrance and exit ramps, bypasses, and tapers in order to reach the desired lane of travel on Road 83. This would so congest the interchange facility as to create an undesirable and dangerous traffic hazard. We find no evidence in the record to refute the foregoing testimony given by the witness who was called on behalf of petitioner.
Respondents seek to justify the reasonableness of the discretion exercised by the trial court by arguing that the plans for the reconstruction of Road 83 should be *261 redesigned by petitioner so as to effect a cut in the hills lying to the north and south of the interchange, thereby reducing the incline and making the approaches to the interchange on a relatively level grade. Respondents reason that if this is done, the crossovers on Road 83 could be constructed much closer to the interchange without creating undue traffic hazards in which event petitioner would not need any more land for limited access purposes than that granted by the trial court in its order of taking. We do not conceive it .to be the proper function of the court to pit its judgment on highly technical engineering problems against that of the engineering experts employed for the purpose of designing state highways, structures, and facilities. This function has been delegated by the legislature to the petitioner by the enactment of the Highway Code which provides as follows:

“Design of limited access facility

“(1) The highway authorities of the state, county, city, town and village are authorized to so design any limited access facility and to so regulate, restrict, or prohibit access as to best serve the traffic for which such facility is intended; and its determination of such design shall be final. In this connection such highway authorities are authorized to divide and separate any limited access facility into separate roadways by the construction of raised curbings, central dividing section, or other physical separations, or by designating such separate roadways by signs, markers, stripes, and the proper lane for such traffic by appropriate signs, markers, stripes, and other devices.
“(2) No person shall have any right of ingress or egress to, from or across limited access facilities to or from abutting lands, except at such designated points at which access may be permitted, upon such terms and conditions as may be specified from time to time.”[6]
Respondents offered no expert testimony which conflicted with the testimony of petitioner’s expert witnesses concerning the correctness of the interchange design and the necessity for acquiring the strips of land described in the complaint for limited access purposes adjacent to State Road 83 both north and south of the interchange. If expert evidence on the issue of necessity was in dispute, the court would be authorized to reconcile the conflicts and to accept that testimony deemed to be most credible and reasonable. Where, however, an issue must be resolved upon the basis of technical evidence on which only experts are qualified to speak, and such evidence is not in dispute, the court is not justified in rejecting it unless it is so palpably incredible, illogical, and unreasonable as to be unworthy of belief or otherwise open to doubt from some reasonable point of view. As said by the Supreme Court in Chomont v. Ward:
“ * * * The rule is well established that the matter of the credibility of witnesses is peculiarly one for jury determination. * * * This does not mean that a jury is at liberty to disregard completely testimony which is not open to doubt from any reasonable point of view. 58 Am.Jur., Witnesses, Sec. 864, p. 492.’’ [7]
The foregoing does not exclude the corollary rule that when facts sought to be proved by expert testimony are within the ordinary experience of the members of the jury, or disputed by lay testimony, the conclusions to be drawn from such expert testimony will be left to the jury.[8]
We find nothing in the record which either directly or by inference could support the conclusion that the official *262 decision of petitioner to acquire the lands described in the complaint filed in this cause was motivated by fraud, bad faith or constitutes a gross abuse of discretion bordering on oppression of the respondents whose lands are involved herein. Nor do we find any support for a conclusion that the testimony of petitioner’s expert witnesses is incredible, illogical, unreasonable, or unworthy of belief. No such findings were made or conclusions expressed by the trial court in the order appealed.
Respondents urge that abuse of discretion was proved by the evidentiary showing that the amount of land for limited access sought in this case is more than that normally acquired on other interchanges. Such is not necessarily the case. There is no fixed or inflexible rule of law by which the issue of necessity for condemning private property for public use may be measured. Whether the quantity or quality of property sought to be acquired is necessary for a public purpose will depend upon and vary with the facts in each particular case. The amount of land which may be necessary to properly provide for limited access and approaches to a highway interchange in a given case may be more or less than is necessary in another case in which different circumstances are present. In the case sub judice, however, it is our view that petitioner substantiated by credible and substantial evidence the necessity for taking the quantity of land described in its petition for limited access purposes, and we find no credible or substantial evidence in the record to refute such necessity.
Respondents have filed a cross-petition for certiorari raising five points for this court’s consideration. We have carefully reviewed the .brief filed in support of the cross-petition but find that the issues raised thereby were either not raised or passed upon by the trial court at the hearing on the order of taking, are not the proper subjects for review by petition for certiorari, or are without substantial merit.
The order of taking appealed herein is accordingly reversed and the cause remanded with directions that an amended order of taking be rendered in accordance with the views expressed herein.
CARROLL, DONALD K., Acting C. J., and SPECTOR, J., concur.

. Staplin v. Canal Authority (Fla.App.1968) 208 So.2d 853; Howard Johnson, Inc. v. State Road Department (Fla. 1956) 90 So.2d 306.

. Staplin v. Canal Authority, supra note 1, at 856.

. Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527, 535.

. Canal Authority v. Miller (Fla.App.1970) 230 So.2d 193.

. Central Hanover Bank & Trust Co. v. Pan American Airways, 137 Fla. 808, 188 So. 820, 824.

. F.S. § 338.03, F.S.A.

. Chomont v. Ward, (Fla.1958) 103 So.2d 635, 637.

. Mills v. Redwing Carriers, Inc., (Fla.App.1961) 127 So.2d 453.