576 So.2d 907 (1991)
Samuel Nick SHAW, Appellant,
v.
CHARTER BANK, a Federal Savings Bank, Formerly Pine Belt Savings and Loan Association, Appellee.
No. 90-1974.
District Court of Appeal of Florida, First District.
March 26, 1991.
Thomas B. Woodard, Tallahassee, for appellant.
Michael L. Rosen and Susan L. Turner of Holland & Knight, Tallahassee, for appellee.
WOLF, Judge.
Shaw appeals a final judgment granting a deficiency judgment to Charter Bank (Charter) following foreclosure on real and personal property. Among other things, Shaw argues that: (1) The trial court improperly discounted the market value of the property by deducting sales expenses and holding costs which may be incurred by Charter in disposing of the property, and (2) the trial court erred in awarding statutory interest on the entire foreclosure judgment for the period from entry of the foreclosure judgment until entry of the deficiency judgment. The absence of any findings by the trial court to support the deficiency judgment, coupled with the fact that it is impossible to determine from the record how the trial judge could have arrived at the amount of the judgment without utilizing improper factors, require us to reverse and remand to the trial court for issuance of adequate findings of fact to support the judgment or to conduct further proceedings consistent with this opinion. Kim v. Bradshaw, 569 So.2d 532 (Fla. 1st DCA 1990).
*908 On August 29, 1989, Charter obtained a summary final judgment of foreclosure against Shaw and against Sun Steak, a Florida corporation. The judgment of foreclosure was in the amount of $591,472.18 for real property, and $81,460.64 for personal property  a total of $672,932.82. A foreclosure sale was conducted on September 28, 1989. Charter was the only bidder, purchasing the real property for $400,000 and the personalty for $15,000  a total of $415,000. On March 8, 1990, the trial court conducted an evidentiary hearing to determine the amount that the appellee was entitled to recover as a deficiency judgment. Both parties presented expert appraisal testimony as to the fair market value of the real property.
Shaw's expert appraiser, using the market approach, determined that the market value of the land and building, after depreciation for the cost of repairs, was $580,000.[1] The appraiser then testified as to the potential costs of disposition. These costs would include the standard 10 percent real estate sales commission, five percent sales costs, and additional carrying costs. The costs were calculated to be approximately $120,000 if the appellee were required to hold the property for an 18-month period.
Charter's counsel argued that these costs could be deducted from market value to ascertain the "net recognizable value of the property." Charter also argued that it should be awarded interest against the entire amount of the foreclosure judgment until entry of the deficiency judgment.
On May 31, 1990, the trial court entered a final judgment of deficiency in the amount of $305,006.82. Based upon the size of the deficiency judgment, it would appear that the trial court accepted Charter's theories in regard to discounting the fair market value and identifying the period for which interest should be awarded.[2]
A secured party is entitled to recover a deficiency judgment in an amount equal to the total debt minus the fair market value of the collateral. CSI Servs. Ltd. v. Hawkins Concrete Constr., 516 So.2d 337, 338 (Fla. 1st DCA 1987). While ordinarily the granting of a deficiency judgment is within the sound discretion of the trial court, the record must disclose sufficient facts to justify the judgment. Norwest Bank Owatonna v. Millard, 522 So.2d 546 (Fla. 4th DCA 1988).
Charter argues that deductions from fair market value are authorized by the case of Savers Fed. Savings and Loan Ass'n v. Sandcastle Beach Joint Dev., 498 So.2d 519 (Fla. 1st DCA 1986). That case, however, does not provide for discounting the fair market value as was done by the appraiser who testified for Charter. In Savers Fed. Savings and Loan Ass'n, supra, this court held that it was permissible for an appraiser, in certain situations, to back out the cost of sale from the retail value to determine the fair market value of the property, but this court did not sanction further deductions once the appraiser had determined fair market value.[3] In the instant case, the appellee sought further reductions after market value was determined. Such a deduction is not legally authorized.[4]
*909 Finally, it appears from the record that the trial judge may have awarded interest on the entire debt from the time of the foreclosure judgment until entry of the deficiency judgment. Such interest is only valid through the date of the foreclosure sale. On that date, the creditor received the value of the realty and personalty which was to be applied against the existing debt. Further utilization of the full foreclosure amount would result in a windfall for the creditor. From the date of the foreclosure sale, statutory interest may only be awarded against the remaining debt (original debt minus the fair market value of the property received).
Reversed and remanded.
ERVIN and ALLEN, JJ., concur.
NOTES
[1] Charter also presented testimony from its vice president that the personalty was worth about $20,000. Shaw's appraisal as to fair market value on the realty and personal property was higher.
[2] If either appraisers' testimony concerning fair market value was utilized, the deficiency judgment would have been significantly less. In addition, unless the interest calculation offered by Charter was utilized, the judgment would also have been less. Without written findings, it is not apparent how the trial court granted such a large deficiency judgment.
[3] In Savers Fed. Savings and Loan Ass'n, it was permissible for the trial judge to determine that the only willing buyer of the entire property would be a developer who would sell the individual units over a predictable period of time and, thus, the cost of sale and holding costs were legitimate factors in determining market value of the property.
[4] Even if such a deduction was authorized, there is no indication in the record that such a deduction was appropriate in the instant case. There is no evidence which would indicate that the only reasonable use of the property was for retail purposes, thus, justifying a consideration of retail expenses in computing the fair market value. The record is also silent as to whether the appraisal method utilized already included some adjustments related to the location and saleability of the property.