711 So.2d 209 (1998)
Martin L. HAINES, III, Chartered, Appellant,
v.
Gloria SOPHIA, f/k/a Gloria Sprayregen, Appellee.
No. 97-0633.
District Court of Appeal of Florida, Fourth District.
May 20, 1998.
Rehearing Denied June 23, 1998.
Martin L. Haines, III, of Martin L. Haines, III, Chartered, Lake Park, for appellant.
Robert J. Hauser and Steven M. Katzman of Tew & Beasley, L.L.P., West Palm Beach, for appellee.
FARMER, Judge.
We are called upon once again to decide issues relating to a fee dispute between a client and her lawyer in a family law case. In an unrelated decision, Franklin & Marbin, P.A. v. Mascola, 711 So.2d 46 (Fla. 4th DCA 1998), we concluded that the rights and obligations of the parties as to the fee were determined by their fee agreement. We apply the same principle to this appeal and affirm the trial judge's finding that the client owes no further fees to her lawyer.
Here the agreement initially states that the fee shall be based on explicitly stated criteria, which happen to be identical to those set forth in rule 4-1.5(b), notably excluding (b)(3) and (b)(8).[1] It then states that the *210 final bill will be determined at the conclusion of the matter, but that monthly interim bills will be rendered "on a time basis only and shall apply toward the final attorney's fee," specifying the hourly rates for the firm's lawyers.[2] It then states that "[i]n no event, however, shall the final attorney fee exceed the hourly rates charged by more than the sum of," and at this point someone has handwritten the words: "[a]t client's sole discretion." Read as one, the agreement seems to provide that the entire fee will be based solely on the hours billed, unless the client agrees later to an additional amount.
In any case, the agreement then provides that the monthly billings are due and payable within 20 days of billing and that unpaid bills will bear 12% annual interest. It further provides that the client will bear the costs of collection, which include reasonable attorney's fees, and that the client waives her right to trial by jury "in any action related to the collection of payments due under this agreement." It adds that any disputes over the reasonableness of fees claimed, as well as any counterclaim for lawyer malpractice, shall be determined by binding arbitration. The parties agreed to an exception from arbitration, however, when the client discharges the firm before the completion of the matter. In that instance the firm is entitled to a charging lien, "and to have the amount of the fees and costs due determined in the same action before suit is dismissed or concluded."[3] We contrast this provision with the fee contract in Franklin & Marbin, where the client had not agreed to have the reasonableness of the billings determined in a summary proceeding to enforce a charging lien.
In fact, the client had earlier been represented in the same matter by at least two other lawyers, and her spouse had previously been ordered to pay an interim fee of $350,000.[4] The essential controversy in the divorce was the validity of a prenuptial agreementwhich the trial court ruled, after a three day trial, was valid and enforceable. It was only after that determination that the firm was actually retained.[5] The firm was hired on June 25th and discharged four months later on October 25thor before the matter was actually concluded. The case was subsequently settled one month after its discharge.
The evidence at the hearing on the firm's motion to enforce its charging lien and determine the amount of the fees showed that the firm had already been paid $56,251 and that it sought an additional $42,000, as well as some costs. In denying any additional fees to the firm, the trial court said:
"A careful review of the charges submitted by [the firm] reveals instances of multiple attorneys charging for the same court hearings, proceedings, and meetings, duplicative legal research, charges for excessive time spent for non-evidentiary hearings, charges for essentially secretarial work, and at least one entry of 35 hours billed on a Sunday for file review (July 7, 1996)."
Describing the issues remaining in the case when the firm was retained as "limited," the trial judge concluded that the $56,251 already paid "constitutes a reasonable fee for services rendered during the representation at issue."
On appeal, the firm argues that the trial judge's decision is contradicted by certain "billing summaries" prepared by the firm, which it describes as the only "competent evidence" in the record from which the disputed fee could be determined. We disagree. Also adduced were all of the bills prepared by the firm, which contain a detailed *211 listing of all time sheet entries prepared by its lawyers and paralegals. We think these time sheets vividly demonstrate the soundness of the trial court's rulingin spite, we might add, of the court's generous indulgence to the firm in finding the fees already paid reasonable. Indeed we find it very difficult to understand the reasonableness of the extraordinary time spent by the firm after it appeared in this case in which the essential issue had already been resolved.
The time sheets contain numerous examples of excessive and unreasonable entries. As the trial judge herself noted, in one entry on July 7th Martin Haines charged 35 hours, which he describes as essentially reviewing files. Apart from the obvious rewriting of the laws of physics so that it took the earth 25% longer to rotate on its axis that day, there is nothing in the context to suggest such the necessity for such an extraordinary expenditure of time. Haines argues that the 35 hour entry actually encapsulated all the time he had spent on that holiday weekend working on the file. Some other time sheet entries, however, suggest a different conclusion. On June 30th he claims to have spent 10 hours reviewing the file. On July 3rd he claims 9 hours preparing for and attending a "bifurcation" hearing. On July 4th (which is apparently part of the same long holiday weekend) he claims to have spent 2.5 hours reviewing records and preparing an order.
There are many other questionable entries on these time sheets. For example, on July 2nd one associate billed 6.9 hours, while another billed 4.8, essentially for reviewing and organizing the file. On that same day, an associate billed 4.8 hours for research, while a paralegal billed 3 hours for research on retaining liens and substitution of counsel and 2 hours for other research. On July 10th the same associate and law clerk spent 4.2 and 4.5 hours researching the same legal issue. Two days later the law clerk charged 11 hours drafting a position paper, which the same associate charged 3.4 hours to redraft, while still another associate charged 3 hours to continue reorganizing papers from the client. On July 15th Haines charged 6 hours preparing for a hearing. Later in the month Haines, the associate and the paralegal all charged for working on a petition for certiorari. Indeed in the month of July alone the firm's attorneys and paralegal racked up more than 194 hours!
This case also illustrates the significance of diligence, care and attention to detail in the maintenance of contemporaneous time records. As the court explained in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985):
"Florida courts have emphasized the importance of keeping accurate and current records of work done and time spent on a case, particularly when someone other than the client may pay the fee. See M. Serra Corp. v. Garcia, 426 So.2d 1118 (Fla. 1st DCA), review denied, 434 So.2d 887 (Fla.1983); Brevard County School Board v. Walters, 396 So.2d 1197 (Fla. 1st DCA 1981). To accurately assess the labor involved, the attorney fee applicant should present records detailing the amount of work performed. Counsel is expected, of course, to claim only those hours that he could properly bill to his client. Inadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or unnecessary."
472 So.2d at 1150. Although this case does not involve a third party payor of fees, accurate and detailed time records are no less important as between attorney and client.
We take this opportunity to commend the trial judge for sorting through the time sheets and discerning the nature and extent of the time claimed by the firm. We recognize thatin our experience anywaychallenges to the reasonableness of time claimed by lawyers in family law matters are rare, and that it is by far easier for trial judges to accept the lawyer's claims and simply grant a judicial stamp of approval awarding the amounts sought. It is an exceedingly painstaking and time consuming task to sort through, as here, numerous time sheet entries and assess their context and amounts. It is, however, a necessary evil that trial judges make the effort. Public acquiescence in judicial rulings on attorney's fees makes it imperative that judges take the trouble to do so.
*212 We also think it essential for us to state our disapproval of the billing practices evidenced in this case. While lawyers are necessarily entitled to compensation for their services, they are also fiduciaries for their clients. The mere fact that the client is not standing over their shoulders as each time entry is logged does not allow them to inflate the time spent on their client's behalf. Nor does it allow duplicative services by multiple members of the firm and staff. The lawyer's duty to zealously represent the client does not justify the kind and extent of services demonstrated in this case. The ethics of the legal profession demand that the attorney's right to bill a client for legal services rendered be exercised with a healthy restraint for the client's economic interests, that doubts be resolved in favor of the client rather than the firm, and that lawyers charge no more than the circumstances and the standards under rule 4-1.5(b) will bear.
AFFIRMED.
GUNTHER and KLEIN, JJ., concur.
NOTES
[1] See R. Regulating Fla. Bar 4-1.5(b) ("Factors to be considered as guides in determining a reasonable fee include: (1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature; (4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained; (5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and (8) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.").
[2] The agreed rates were: $350 per hour for Martin L. Haines III; $150 per hour for Jon D. Newman and John F. Schutz; and $85 per hour for legal assistants.
[3] The agreement does not specify what property would be subject to the charging lien, or indeed how a charging lien might be enforced before a final judgment in the pending dissolution of marriage action and hence before any recovery or award of property or relief to the client.
[4] The discharge of this successor lawyer occurred shortly after the trial court denied a motion for additional interim attorney's fees from the client's spouse.
[5] By the time the firm was retained, the court file had swollen to nine volumes. The firm's efforts were to add at least three more volumes before its discharge and the ultimate settlement.