MORRIS, Judge.
 

 Eagle’s Crest, LLC, appeals a final deficiency judgment entered in favor of Republic Bank (the Bank), challenging, among other things, the admissibility of
 

 
 *850
 
 the Bank’s expert’s testimony and appraisal report relied upon by the trial court in determining the amount of the deficiency. The Bank cross-appeals, challenging the trial court’s rejection of its expert’s present value reduction of the estimated market price of the property. We affirm the deficiency judgment in all respects because it is supported by competent, substantial evidence. We write to address the two issues above.
 

 The Bank held a mortgage on a large tract of land owned by Eagle’s Crest in Plant City. Eagle’s Crest had hoped to transform the historically agricultural land into a residential housing development. But the worsening economy rendered the development no longer feasible, and Eagle’s Crest defaulted on the mortgage. The parties stipulated to a final judgment of foreclosure, which was entered in July 2008 in the amount of $7,415,656.45. The property was sold to the Bank at a clerk’s foreclosure auction on September 23, 2008. The Bank then filed a motion for deficiency judgment against Eagle’s Crest. After a final hearing, the trial court found that the fair market value of the property on the date of the foreclosure sale was $6.6 million. The trial court determined a deficiency in the amount of $1,111,753.41, inclusive of interest, attorney’s fees, and costs.
 

 On appeal, Eagle’s Crest contends that the trial court abused its discretion in refusing to strike the testimony and appraisal report of the Bank’s appraisal expert, Frank Catlett, regarding the value of the property. Eagle’s Crest argues on appeal, as it did below, that Mr. Catlett’s valuation conclusions were not determined using any ascertainable methodology and were largely the result of his unsupported opinion.
 

 This court must determine whether the trial court abused its discretion in admitting into evidence the Bank’s expert’s testimony and appraisal report.
 
 See Ramirez v. State,
 
 542 So.2d 352, 355 (Fla.1989);
 
 Collins v. Collins,
 
 873 So.2d 1261, 1263 (Fla. 1st DCA 2004). Unless omissions in an expert’s analysis are so glaring as to render the expert’s opinion inadmissible, once an expert is qualified to render an opinion on the subject, the matter becomes one of determination of credibility and weight by the trial court.
 
 See Centex-Rooney Constr. Co. v. Martin County,
 
 706 So.2d 20, 27-28 (Fla. 4th DCA 1997). A court is not justified in rejecting expert testimony unless it is so “incredible, illogical, and unreasonable as to be unworthy of belief.”
 
 State Dep’t of Transp. v. Myers,
 
 237 So.2d 257, 261 (Fla. 1st DCA 1970). Additionally, our review of the trial court’s factual findings is limited to determining whether they are supported by competent, substantial evidence.
 
 See Woebse v. Health Care & Ret. Corp. of Am.,
 
 977 So.2d 630, 632 (Fla. 2d DCA 2008).
 

 At the hearing, Eagle’s Crest stipulated that Mr. Catlett is a qualified, recognized expert in the field of real estate appraisal. Significantly, on the subject of the valuation of the property, Eagle’s Crest offered only the testimony of its president. Although sophisticated in real estate acquisition and development, Eagle’s Crest’s president was not offered or qualified as an expert in the field of real estate appraisal. The trial court, after hearing the testimony of Mr. Catlett, which included extensive cross-examination by Eagle’s Crest’s counsel, determined that Mr. Catlett’s valuation opinions were “well reasoned.” The trial court did not abuse its discretion in admitting and crediting Mr. Catlett’s testimony and appraisal report.
 

 On cross-appeal, the Bank challenges the trial court’s rejection of Mr.
 
 *851
 
 Catlett’s present value discounting of the estimated market price that could be obtained by the Bank after holding the property for two years. Mr. Catlett was asked to value the property as of the foreclosure sale date of September 23, 2008. He testified that based on comparable sales, the most probable market price would be $6.6 million, but based on his belief that the property would not sell for at least two years, he conducted a present value analysis, reducing that number by 13% for two years. That analysis resulted in a market value price of $5,170,000 for the foreclosure sale date of September 23, 2008. In its order entered after final hearing, the trial court “intentionally refused to apply Mr. Catlett’s ‘present value’ reduction factor as subjectively speculative,” and the trial court found that the market value of the property on the foreclosure sale date was $6.6 million.
 

 The Bank relies on the holding in
 
 Savers Federal Savings & Loan Ass’n v. Sandcastle Beach Joint Venture,
 
 498 So.2d 519 (Fla. 1st DCA 1986), in arguing that once the trial court accepted and relied on Mr. Catlett’s appraisal report to determine the estimated market price of the property, the trial court was required to accept Mr. Catlett’s opinion on discounting the price. In
 
 Savers,
 
 the appraiser testified that a foreclosed condominium development could be sold for $1,660,000, after a period of eighteen months.
 
 Id.
 
 at 521. To reach the fair market value on the date of the foreclosure sale, the appraiser discounted this figure to account for specific sales costs and holdings costs that would be incurred over the eighteen months. The appraiser testified that the fair market value on the date of the foreclosure sale was $1,185,000. The trial court found that the fair market value was instead $1,660,000, and the First District reversed, holding that the trial court erred in not backing out the costs of sale in deriving fair market value.
 
 Id.
 
 at 522. “Since [the appraiser’s] opinion was the only evidence as to fair market value, the trial judge was precluded from rejecting the opinion as to fair market value once he had accepted the underlying premise [regarding] the proper way to value the project.”
 
 Id.
 

 The Bank contends that it was arbitrary for the trial court to accept the basic premise of Mr. Catlett’s report and testimony and not accept his reduction of the market price based on the anticipated two-year holding period. However, in
 
 Savers,
 
 the court noted several times that the appraiser’s testimony was the only evidence regarding fair market value before the trial court. As previously indicated, this was not the case here. In addition, in
 
 Savers,
 
 the appraiser testified to specific costs that would be incurred during the holding period; here, Mr. Catlett did not base his discount rate of 13% on any measurable or identifiable costs.
 

 Savers
 
 was later clarified and distinguished in
 
 Shaw v. Charter Bank,
 
 576 So.2d 907 (Fla. 1st DCA 1991). In
 
 Shaw,
 
 the borrower’s appraiser determined the market value of the property but then testified to the specific “potential costs” of disposing of the property if the seller was required to hold it for eighteen months. The lender, relying on
 
 Savers,
 
 argued that these potential costs should be deducted from the market value of the property, and the trial court agreed and discounted the market value.
 
 Id.
 
 at 908. The First District reversed, holding that
 
 Savers
 
 “did not sanction further deductions once the appraiser had determined fair market value.”
 
 Id.
 
 The First District clarified that
 
 Savers
 
 merely stands for the principle that in certain situations an appraiser can “back out the cost of sale from the retail value [of the property] to determine the fair market value.”
 
 Id.
 
 The court further noted that such a deduction for retail ex
 
 *852
 
 penses is not justified unless “the only reasonable use of the property [is] for retail purposes.”
 
 Id.
 
 at 908 n. 4. The court also suggested that a deduction would not be appropriate if “the appraisal method utilized [had] already included some adjustments related to the location and saleability of the property.”
 
 Id.
 

 Here, it is clear that the property can be reasonably used for purposes other than sale for residential development. Mr. Cat-lett’s appraisal specifically recognized that the subject property “is in a hold for ‘future development mode’ and should continue to be used in an agricultural capacity.” Mr. Catlett testified that the holding costs could be partially offset by revenue generated by the agricultural use of the property. Additionally, it is clear that Mr. Cat-lett took into account such factors as the location and saleability of the property in determining the estimated market price of $6.6 million.
 

 We are mindful that in order to find that the trial court abused its discretion, we must find that the judicial action was arbitrary, fanciful, or unreasonable. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.
 
 Canakaris v. Canakaris,
 
 382 So.2d 1197, 1203 (Fla.1980);
 
 see also Peoples Fed. Sav. & Loan Ass’n of Tarentum, Pa. v. Shoreline Garden Townhomes, II, Ltd.,
 
 538 So.2d 864, 866 (Fla. 1st DCA 1988) (“Although [an] appellate court might have reached a different conclusion as to fair market value, the proper standard of review for this court is whether the trial court abused its discretion.” (citing
 
 Savers,
 
 498 So.2d 519)). For the reasons discussed above, we conclude that the trial court did not abuse its discretion in rejecting Mr. Catlett’s present value discounting.
 

 Accordingly, we affirm the final judgment of deficiency.
 

 LaROSE, J, and RAIDEN, MICHAEL E., Associate Judge, Concur.