IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

PATRICIA WILLIAMS,

      Appellant,

v.

JACKIE G. WILLIAMS,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-4676

Opinion filed May 19, 2015.

An appeal from the Circuit Court for Walton County.
Kelvin C. Wells, Judge.

Jerome M. Novey, Shannon L. Novey, and Christin F. Gonzalez, Novey Law, Tallahassee, for Appellant.

John F. Greene, Destin, for Appellee.

CLARK, J.

Before this Court for the second time, Ms. Williams challenges, on four grounds, the trial court's distribution of the marital estate she and Mr. Williams amassed during their fifty-plus year marriage. Because we are unable to undertake meaningful appellate review based on the trial court's Amended Final Judgment, we must remand back to the trial court for further consideration of three of Ms. Williams' issues.

As her first issue, Ms. Williams claims the trial court erred by valuing the parties' extensive New Mexico art collection at $376,086. The court determined this figure to be the collection's fair market value. Fair market value, by definition, includes what a "buyer is willing to pay on the open market and in an arm's-length transaction." Black's Law Dictionary (10th ed. 2014). Accordingly, the expert's opinion a buyer would have to obtain a twenty percent price reduction to purchase amounted to a consideration of fair market value and not an impermissible cost of sale. See Shaw v. Charter Bank, 576 So. 2d 907, 908 (Fla. 1st DCA 1991) (explaining it may be permissible, in certain situations, "to back out the cost of sale from the retail value to determine the fair market value of the property"); Savers Fed. Sav. & Loan Ass'n v. Sandcastle Beach Joint Dev., 498 So. 2d 519 (Fla. 1st DCA 1986) (explaining only willing buyer for piece of real estate would be developer, thus cost of sale and holding costs were appropriate factors in fair market value determination). The court's fair market value determination was supported by competent, substantial evidence and is affirmed. See Blossman v. Blossman, 92 So. 3d 878, 879 (Fla. 1st DCA 2012) (explaining this Court reviews valuations for competent, substantial evidence).

Second, Ms. Williams argues the court's "equalization payment" is not explained in sufficient detail to permit meaningful review. We agree. Using the numbers from the trial court's Amended Final Judgment, the total marital assets

were $4,864,443; Former Wife was entitled to half,[1] or $2,432,222. Again taking the trial court's numbers, Former Wife had received $2,257,718. Thus, she was entitled to another $174,504. Instead, the court listed her entitlement at $195,507. Of this, $138,071 came from FEMA, Circle B, Joint Checking, and Social Security—leaving $36,433 to accomplish equal distribution. Yet the court gave Former Wife a further equalization payment of $57,436. The extra $21,003 is unexplained. And it is impossible for this Court to review the $21,003, or $57,436, or $195,507 because the court did not provide a worksheet or any documentation regarding its distribution; we have only its written order which does not explain the discrepancy.

Therefore, the trial court must amend its judgment to provide sufficient documentation and evidence to support its distribution and enable this Court to undertake meaningful review. See § 61.075(3)(d), Fla. Stat.; Williams v. Williams, 133 So. 3d 605, 606 (Fla. 1st DCA 2014). (equalization payment and asset distribution must be supported by competent, substantial evidence and trial court must provide sufficient findings and documentation to allow the appellate court meaningful review).

Third, Ms. Williams contends there was no competent, substantial evidence for the court's valuation of monies Mr. Williams, personally and not as a

---

[1] As unequal distribution was not the intent or desire of the parties or the court, equal distribution is required. See § 61.075(1), Fla. Stat.

shareholder of the parties' company, received under a FEMA contract. The trial court deducted $252,383 from the total monies Mr. Williams received from the FEMA contract; the court cited "business related expenses" listed on Mr. Williams' personal tax return. But the expenses the court deducted were not related to the FEMA contract, they were related to a former employee of the company and litigation surrounding that employee. Mr. Williams specifically testified to FEMA related expenses in the range of $30-35,000; he also testified he was reimbursed for these expenses. In short, there was no competent, substantial evidence to reduce the FEMA contract monies received by Mr. Williams personally by expenses related to other business operations. The trial court must revalue the asset accordingly.

Fourth, Ms. Williams and Mr. Williams agree the court neglected to include two sculptures in its equitable distribution. The parties stipulated the total value was $10,000 total, $5000 per sculpture. This must be added to the equal distribution scheme.

Accordingly, we (1) affirm the court's valuation of the New Mexico art collection; (2) reverse the $195,507 cash payment; and (3) reverse the FEMA contract valuation. We remand for the trial court to (1) set forth specific findings, documentation, and evidence relating to its equitable distribution scheme sufficient so that this Court can review its calculation and distribution methodology; (2)

4

award an amount supported by competent, substantial evidence for the FEMA contract; and (3) account for the $10,000 stipulated value of the sculptures in its estate distribution.

We therefore AFFIRM in part, REVERSE in part, and REMAND to the trial court for further action.

THOMAS and WETHERELL, JJ., CONCUR.