# Third District Court of Appeal

## State of Florida

Opinion filed May 20, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-1088
Lower Tribunal No. 04-11813-CA-01
_____

**Steve Ferguson,**
Appellant,

vs.

**The Republic of Trinidad and Tobago, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

The Law Office of Stephen James Binhak, P.L.L.C., and Stephen J. Binhak; León Cosgrove Jiménez LLP, and Scott B. Cosgrove, for appellant.

White & Case LLP, and Raoul G. Cantero and James N. Robinson and Ryan Ulloa and W. Dylan Fay, for appellees.

Before SCALES, C.J., and FERNANDEZ and BOKOR, JJ.

BOKOR, J.

Steve Ferguson, one of numerous defendants in a long-running RICO action brought by the Republic of Trinidad and Tobago (the Republic), appeals a judgment awarding the Republic over $17 million in attorney fees and costs after it prevailed in the underlying suit. Ferguson alleges that the court abused its discretion by awarding several categories of fees and costs that he claims represented unreasonable fee rates and hours, cumulative or unrelated work, and improper overhead expenses. He also alleges that the court improperly admitted the underlying billing data under the business records exception. We affirm as to the fee award but reverse and remand for additional findings as to costs.

## BACKGROUND

Ferguson was found liable in 2023 for civil fraud, conspiracy to commit fraud, and civil RICO violations related to his misappropriation of public funds for construction of the Piarco International Airport in Trinidad and Tobago. Throughout the litigation, the Republic was represented first by Sequor Law and then by White & Case after Sequor was disqualified in May 2022.[1]

---

[1] The extensive procedural history of the underlying case spans over 20 years of litigation and has been amply recounted by this court in other final and nonfinal appeals, including Ferguson's prior merits appeal. See Ferguson v. Republic of Trinidad and Tobago, 422 So. 3d 717, 721 (Fla. 3d DCA 2025) (Logue, J., concurring).

After the final judgment, the Republic moved for attorneys' fees and costs, supporting its claim with an expert affidavit from a retired circuit judge, who recommended a total fee award of $17,787,593.78 for both law firms. Ferguson proffered a competing affidavit from his own fee expert, who recommended a reduced lodestar of $3,454,992.67.

The Republic's expert compiled the fee amounts from each firm's invoices into Excel spreadsheets with individual rows for each time entry for which the Republic was seeking fees. The Republic's expert also attested that he reviewed each individual time entry and made reductions on a line-by-line basis. Ferguson's expert also reviewed each individual time entry but sorted his recommended reductions into broad categories of objectionable fees and reduced the award across each category, with only a selection of individual examples cited in the affidavit. And while Ferguson alleges that his expert made annotated versions of Excel spreadsheets containing specific objections to individual time entries, he concedes that these records were not entered into evidence. The underlying billing data, including timesheets and invoices, was entered into evidence over Ferguson's hearsay objection.

After a hearing, the trial court largely accepted the Republic's fee expert's methodology and his proposed attorney fee calculations, awarding

the Republic a total of $16,587,904.13 in fees. The court also awarded $802,006.80 in costs. This appeal followed.

## ANALYSIS

## I.

Ferguson first claims that the trial court abused its discretion by admitting the underlying attorney fee records based on a preserved hearsay objection and the Republic's failure to authenticate the records by either a party with firsthand knowledge or a competent records custodian. But the Republic proffered an affidavit from its former Attorney General and current Minister of Rural Development and Local Government, Faris Al-Rawi, to lay the foundation for admission of the billing data under the business records exception. Ferguson claims that Al-Rawi lacked sufficient personal knowledge as to the law firms' recordkeeping practices to authenticate the records, and that without this evidence, the judgment fails because it relies on inadmissible hearsay. Ferguson does not otherwise dispute the accuracy of the underlying records.

"We review a trial court's decision to admit evidence for an abuse of discretion." Jackson v. Household Fin. Corp. III, 298 So. 3d 531, 535 (Fla. 2020). Hearsay refers to any out-of-court oral or written statement used to prove the truth of the matter asserted, and such statements are generally not

4

admissible except as provided by statute. §§ 90.801–90.802, Fla. Stat. Hearsay statements are admissible as records of a regularly conducted business activity when accompanied by the testimony of a qualified witness attesting to certain foundational requirements:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c) and s. 90.902(11), unless the sources of information or other circumstances show lack of trustworthiness. The term "business" as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

§ 90.803(6)(a), Fla. Stat. In other words, business records are admissible when the proffering party establishes:

> (1) that the record was made at or near the time of the event, (2) that it was made by or from information transmitted by a person with knowledge, (3) that it was kept in the ordinary course of a regularly conducted business activity, and (4) that it was a regular practice of that business to make such a record.

Jackson, 298 So. 3d at 536 (quotation omitted). These foundational requirements can be satisfied by either "(1) offering testimony of a records custodian, (2) presenting a certificate or declaration that each of the

5

elements has been satisfied, or (3) obtaining a stipulation of admissibility."

Id. at 535 (quotation omitted).

> If the party offers the testimony of a records custodian to lay the foundation, it is not necessary that the testifying witness be the person who created the business records. The witness may be any qualified person with knowledge of each of the elements. A qualified witness, therefore, is anyone with personal knowledge of the organization's regular business practices relating to creating and retaining the record(s) at issue. This knowledge will necessarily come from the witness's training or experience, or, most likely, a combination of both.

Id. at 535–36 (citation modified).

Here, Al-Rawi's affidavit satisfied the elements of section 90.803(6). He attested that he oversaw the case in both his current and former position and had personal knowledge of contents of the fee records and the Republic's recordkeeping practices. He stated that he was familiar with the payments made by the Republic and that the records accurately reflect those payments. And he included specific language mirroring section 90.803(6)(a), stating that the records were "made at or near the time of occurrence of the matters and events set forth in the Invoices and Payment Records," were "made by, or from information transmitted by, a person with knowledge of the described matters and events," and were "kept in the course of the Republic's regularly conducted business activities." As the supreme court has noted, section 90.803(6) requires only "a minimal testimonial foundation"

6

which is satisfied by "straightforward testimony that each of the criteria is met":

> A minimal testimonial foundation is both appropriate in this context and desirable in terms of fairness and the efficient administration of justice.
>
> . . . .
>
> To secure admissibility under Florida's business-records exception, the proponent must show that (1) the record was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly conducted business activity; and (4) that it was a regular practice of that business to make such a record.
>
> It would be odd if a party could not make this required showing with straightforward testimony that each of the criteria is met. Because the records custodian testimony is relevant only to the collateral issue of essentially authenticating relevant documents, there is no reason to prolong a trial and clutter a record with irrelevant details of those practices and procedures. To do so would add unnecessary inefficiency into the process.

Jackson, 298 So. 3d at 539 (citation modified). Ferguson does not identify any reason why the Republic's attorney general who oversaw the case could not sufficiently lay a predicate for the admissibility of the billing records reflecting what the Republic paid. As this court has explained:

> Florida law requires a party seeking attorney's fees to provide proof (a) "detailing the nature and extent of the services performed and ... [ (b) ] expert testimony regarding the reasonableness of the fees." *Trumbull Ins. Co. v. Wolentarski*, 2 So. 3d 1050, 1055 (Fla. 3d DCA 2009) (quoting *Morton v. Heathcock*, 913 So. 2d 662, 669 (Fla. 3d DCA 2005)); *see also,*

7

*Saussy v. Saussy*, 560 So. 2d 1385 (Fla. 2d DCA 1990) (applying this evidentiary standard in a dissolution case). Where a party has provided sufficient, admissible proof of these two components, no court has further mandated direct testimony from the attorney who performed the services.

Cozzo v. Cozzo, 186 So. 3d 1054, 1055–56 (Fla. 3d DCA 2015). The billing records were incorporated into the payment records maintained by the Republic, as testified by the attorney general and records custodian. The trial court did not abuse its discretion by admitting the records.

## II.

Next, we are compelled to affirm as to the attorney fee award, as the trial court made sufficient findings to justify its exercise of discretion. Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145, 1150–51 (Fla. 1985), requires the trial court to determine the number of hours reasonably expended on the litigation, multiplied by the reasonable hourly rate, and then add or subtract from that lodestar amount based on a contingency risk factor and the results obtained. "In determining the hourly rate, the number of hours reasonably expended, and the appropriateness of the reduction or enhancement factors, the trial court must set forth specific findings." Id. at 1151; see also Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828, 834 (Fla. 1990) (clarifying Rowe factors). We review an attorney fee award for abuse of discretion, though the court's factual findings must be supported by

8

competent, substantial evidence. See, e.g., Gidwani v. Roberts, 349 So. 3d 917, 921 (Fla. 3d DCA 2022).

"As with other discretionary decisions, we must affirm the order of the trial court if reasonable people could differ as to the propriety of the action taken." Sunshine State Ins. Co. v. Davide, 117 So. 3d 1142, 1145 (Fla. 3d DCA 2013) (finding no abuse of discretion as to fee award where "there is evidence in the record presented by the experts to support the trial court's conclusion"). The court supported its fee award with findings on the reasonableness of the Republic's proposed hourly rates and hours expended. Relying heavily on the extraordinary size and complexity of the case, which the court compared to Engle progeny litigation,[2] the court addressed each expert's testimony in the context of the relevant Rowe factors. It found the Republic's expert more persuasive given the circumstances of the case and the lack of underlying data available for Ferguson's expert. The court also specifically addressed Ferguson's objections and rejected them individually, finding that the alleged duplicative

---

[2] See Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006) (affirming class-action judgment against tobacco company); see also Philip Morris USA Inc. v. Jordan, 333 So. 3d 300, 301 (Fla. 1st DCA 2022) (finding no abuse of discretion as to costs and fees awarded in Engle progeny case where court accepted expert's recommendation that requested hourly rates were reasonable given "extraordinary" complexity of Engle litigation).

work was necessary for White & Case to pick up after Sequor's disqualification given the time elapsed in the case and the complexity of the issues.

Specifically, the trial court found that even if the hours cited by Ferguson were duplicative, they were not *unreasonably* duplicative. Rowe does not provide a blanket ban on all duplicative time billed by multiple attorneys. Although "[d]uplicative time [entries] charged by multiple attorneys working on the case are generally not compensable," our sister court explained that "a reduction is warranted only if the attorneys are *unreasonably* doing the *same* work." Spanakos v. Hawk Sys., Inc., 362 So. 3d 226, 241 (Fla. 4th DCA 2023) (quotations omitted). Any duplication was a necessary byproduct of one firm's disqualification, and another firm getting up to speed and moving the case forward. The Ninth Circuit explained the trial court's role in sussing out unnecessarily duplicative work:

> The court may reduce the number of hours awarded because the lawyer performed unnecessarily duplicative work, but determining whether work is unnecessarily duplicative is no easy task. When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time.

Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). Here, the trial court made specific findings that under the circumstances the work was either not duplicative or was not unnecessarily duplicative. Cf. Univ. Prop. & Cas. Ins. Co. v. Deshpande, 314 So. 3d 416, 420 (Fla. 3d DCA 2020) (reversing fee award where trial court "did not make any specific findings as to disputed time entries which may have been excessive, vague, duplicative, or ministerial"). The trial court also found that the rates were not excessive in context with the available evidence of rates customarily charged in the community.

Ferguson does not challenge the qualifications or methodology of the Republic's expert. Rather, he asks us to substitute our judgment for that of the trial court. But "[u]nless omissions in an expert's analysis are so glaring as to render the expert's opinion inadmissible, once an expert is qualified to render an opinion on the subject, the matter becomes one of determination of credibility and weight by the trial court." Eagle's Crest, LLC v. Republic Bank, 42 So. 3d 848, 850 (Fla. 2d DCA 2010); see also Gidwani, 349 So. 3d at 924 (affirming fee award where trial court's findings were supported by competent substantial evidence and court was within its discretion as factfinder to find one party's expert more credible or persuasive than the

11

other's). In reviewing the order and record on appeal, we cannot conclude that the trial court abused its discretion in rendering its attorney fee award.[3]

**III.**

Unlike the sufficiency of the findings pertaining to the fee award, the court did not make equally specific findings in its award of $802,006.80 in costs. Rather, the cost judgment simply stated that the court "considered" the Statewide Uniform Guidelines for Taxation of Costs in Civil Actions and agreed with the Republic's recommended award in totality. While those

---

[3] As an independent basis to affirm the fee award, the lack of record evidence of Ferguson's fee expert's specific objections to individual line items precludes reversal as to the attorney fees. While Ferguson relies on the samples cited in his expert's affidavit, he does not connect these to specific data entries from the billing records or explain how his expert arrived at his exact figures. The trial court was within its discretion to find this proffer insufficient to rebut the Republic's affidavit. See Applegate v. Barnett Bank of Tallahassee, 377 So. 2d 1150, 1152 (Fla. 1979) ("Without a record of the trial proceedings, the appellate court can not properly resolve the underlying factual issues so as to conclude that the trial court's judgment is not supported by the evidence or by an alternative theory."); Centex-Rooney Constr. Co. v. Martin County, 725 So. 2d 1255, 1259 (Fla. 4th DCA 1999) ("Although the fee applicant has the burden of establishing its entitlement to an award of attorneys' fees, the opponent of the fee has the burden of pointing out with specificity which hours should be deducted." (citation omitted)); Webber for Keitel v. D'Agostino, 251 So. 3d 188, 192 (Fla. 4th DCA 2018) (affirming cost and fee award where trial court's findings were supported by competent substantial evidence and appellant did not specifically identify fees and costs that should have been excluded).

Guidelines are "advisory only" and "the appropriate assessment of costs in any particular proceeding remains within the discretion of the trial court," In re Amendments to Uniform Guidelines for Taxation of Costs, 915 So. 2d 612, 614 (Fla. 2005), a court abuses that discretion by departing from the guidelines without making sufficient findings to justify the departure. See Ocean Club Cmty. Ass'n, Inc. v. Curtis, 935 So. 2d 513, 517 (Fla. 3d DCA 2006) (reversing and remanding as to non-compensable costs awarded without finding of factual basis).

Here, Ferguson has raised specific objections to several categories of awarded costs that are ordinarily not taxable, including computer research, overhead, travel expenses, and clerical work. See Field Club, Inc. v. Alario, 180 So. 3d 1138, 1142 (Fla. 2d DCA 2015) (reversing award of costs for overhead and expert witness fees that "could have been appropriate if supported by clear findings by the trial court"); Robbins v. McGrath, 955 So. 2d 633, 635 (Fla. 1st DCA 2007) ("Postage, fax transmissions, delivery service, and computer research are office expenses or overhead that should not be taxed as costs. Additionally, attorney travel time and expenses should not be taxed as costs pursuant to the Statewide Uniform Guidelines for Taxation of Costs in Civil Actions." (citations omitted)). While the trial court could have awarded these ordinarily not taxable costs upon sufficient

findings, "the trial court is required to sufficiently identify what nontaxable costs are being awarded and is further required to make specific findings as to the unique and extraordinary circumstances justifying such an award." Rodrigo v. State Farm Fla. Ins. Co., 166 So. 3d 933, 934 (Fla. 4th DCA 2015) (reversing and remanding as to award of "unspecified costs for travel time and expenses, transcripts, expedited delivery services, and copies" where "court failed to make any findings as to whether the specific costs awarded were taxable, and if not, why they were being awarded"); see also Stewart v. Stewart, 534 So. 2d 807, 807 (Fla. 1st DCA 1988) ("When an order awarding attorney's fees and costs fails to set forth specific findings regarding the appropriateness of the enhancement or reduction of an award pursuant to the requirements set forth in [Rowe], the order will be reversed, notwithstanding the existence vel non of competent substantial evidence upon which the trial court could have based its determination.").

We understand that "[i]t is an exceedingly painstaking and time consuming task to sort through, as here, numerous time sheet entries and assess their context and amounts. It is, however, a necessary evil that trial judges make the effort." Saad v. Abud, 359 So. 3d 855, 857 (Fla. 3d DCA 2023) (quoting Haines v. Sophia, 711 So. 2d 209, 211 (Fla. 4th DCA 1998)).

14

Constrained by our precedent, we reverse and remand for additional findings as to those ordinarily not taxable costs awarded by the trial court.

Affirmed in part, reversed in part, and remanded.