969 So.2d 1219 (2007)
Matt ECKHARDT, Brandon McArthur, Brian LeClerc and Valerie Bullock, Appellants,
v.
424 HINTZE MANAGEMENT, LLC, Appellee.
No. 1D07-56.
District Court of Appeal of Florida, First District.
December 17, 2007.
*1220 Timothy W. Weber of Battaglia, Ross, Dicus & Wein, P.A., St. Petersburg, for Appellants.
John F. Hayter, Gainesville, for Appellee.
LEWIS, J.
Matt Eckhardt, Brandon McArthur, Brian LeClerc, and Valerie Bullock ("the tenants") seek review of an award of attorneys' fees to 424 Hintze Management, LLC ("the landlord"). The tenants contend the trial court erred by failing to reduce the lodestar figure based on the landlord's limited recovery, and by applying a contingency multiplier to the lodestar figure without any evidence that the multiplier was necessary to enable the landlord to secure competent counsel. We agree, and accordingly, reverse the Order Awarding Attorney Fees and Costs and remand with instructions for the trial court to reduce the amount of the attorneys' fees award consistent with this opinion.
The landlord filed suit against the tenants seeking damages in the amount of $17,716.37 for the alleged breach of a residential lease and accompanying personal *1221 guarantee. At the time of filing the action, the landlord was represented by attorney John Hayter. The tenants counterclaimed, alleging, among other things, that the landlord retook possession of the property but failed to make a good faith effort to relet the premises, thereby failing to mitigate its damages. The case was set for a jury trial. By the time of the trial, two additional attorneys, Brent Siegel and Charles Hughes, had joined Hayter to assist in the landlord's representation. After a two-day trial, the jury rendered a verdict for the landlord but determined that the landlord had failed to mitigate its damages because it did not make a good-faith effort to relet the premises. The jury awarded the landlord $4,250.00 in damages.
The landlord filed a Motion to Tax Attorneys' Fees and Costs, and the trial court conducted an evidentiary hearing. At the hearing, Hughes testified that this case arose out of a landlord-tenant dispute where the tenants had failed to abide by the terms of their lease, and that the only issue pending was whether the tenants gave proper notice prior to vacating the premises. Hughes testified that the only novel or unique aspect of the case was that the tenants had brought a counterclaim. However, Hughes conceded that it would not be out of the ordinary for a tenant to bring a counterclaim in a landlord-tenant dispute.
Hayter testified that he was hired by the landlord to collect on a lease. He testified that he had initially requested the landlord to pay an hourly fee, but that the landlord could not afford the hourly fee so they entered into a contingency fee agreement. Hayter testified that he was leery about taking the case, but he ultimately chose to take the case based on the potential of receiving a contingency multiplier on his fees. Hayter argued that it would be error to reduce his fees solely because the amount in controversy was relatively low, and that a contingency multiplier should be applied to his and his co-counsels' fees.
Each side also presented expert testimony. The landlord's attorney-fee expert testified that a contingency risk multiplier was appropriate in this case. He testified that he personally would have taken this case only on the basis of an hourly fee arrangement. The landlord's expert admitted that this case did not involve particularly novel issues and that it was unusual for a landlord-tenant dispute to result in a jury trial. He further testified that Hayter had told him that the landlord had no money to pay an hourly fee. The tenants' fee expert testified that, based on the discrepancy between the jury's award of $4,250.00 and the original claim of over $17,000.00, the landlord's attorneys' fees should be reduced from the lodestar figure.
In its order awarding attorneys' fees, the trial court multiplied the seventy-two hours Hayter worked as the landlord's lead counsel by $250.00 per hour. The court found that Siegel served as co-counsel at a rate of $250.00 per hour for 2.17 hours and Hughes served as co-counsel at a rate of $175.00 per hour for 3.5 hours. Accordingly, the resulting lodestar amount of attorneys' fees was $22,925.00. The court found that application of a contingency risk multiplier to the lodestar figure was warranted based on the following findings:
a. Mr. Hayter's fee arrangement with his client was purely contingent due to his client's inability to pay hourly fees at the time this matter was undertaken;
b. Mr. Hayter was unable to effectively reduce the risk of nonpayment of his fees in this case in any way;
c. The evidence presented showed there were probably no attorneys with *1222 comparable experience and ability other than Mr. Hayter in the relevant market who would have taken this case on a contingent basis;
d. The plaintiff in this matter prevailed on the significant issues tried before the court: Plaintiff made a substantial recovery, successfully defeated the defendant's claims for general and specific damages and, finally, by doing so, completely avoided an adverse attorneys (sic) fee claim;
e. Mr. Hayter testified that the potential for application of a multiplier was a pivotal factor in his decision to undertake the matter for purposes of litigation.
The court further found that the landlord's likelihood of success at the onset of the case was approximately even, warranting a multiplier of 1.5 to 2.0. The trial court applied a 1.5 contingency risk multiplier to the lodestar figure, equaling a fee award of $34,387.50. This appeal followed.
In Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1150 (Fla.1985), the supreme court adopted the federal lodestar approach for calculating attorneys' fees, which requires the court to multiply the reasonable number of hours expended by a reasonable hourly rate to reach the lodestar figure. In Rowe, the supreme court held that courts should then consider the following factors to determine whether to increase or decrease the lodestar amount:
(1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly. (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. (3) The fee customarily charged in the locality for similar legal services. (4) The amount involved and the results obtained. (5) The time limitations imposed by the client or by the circumstances. (6) The nature and length of the professional relationship with the client. (7) The experience, reputation, and ability of the lawyer or lawyers performing the services. (8) Whether the fee is fixed or contingent.
Id. at 1150 n. 6. When a trial court determines whether to increase or decrease the lodestar, it "must make specific findings concerning . . . the appropriateness of any reduction or enhancement factors." Baratta v. Valley Oak Homeowners' Ass'n at the Vineyards, Inc., 928 So.2d 495, 498 (Fla. 2d DCA 2006). A court must reduce an attorney fee award from the lodestar amount when the prevailing party achieves only limited success. Bd. of Regents v. Winters, 918 So.2d 313, 314 (Fla. 2d DCA 2006); see also State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 63-64 (Fla.1995) (reversing an award of attorneys' fees and remanding for reduction and recalculation when the prevailing party's recovery was reduced on appeal); Norman v. Hous. Auth., 836 F.2d 1292, 1302 (11th Cir.1988). "[T]he court should indicate that it has considered the relationship between the amount of fee awarded and the extent of success." Winters, 918 So.2d at 315.
In this case, after the trial court calculated the lodestar figure, it failed to adjust the lodestar figure based on the amount in controversy, the results obtained, and the other Rowe factors. The trial court awarded the landlord $34,387.50 in fees even though there was only $17,716.37 in controversy, and the jury awarded the landlord only $4,250.00. Because the landlord's success at trial was limited "in comparison to the scope of the litigation as a whole," Norman, 836 F.2d at 1302, the trial court erred by failing to reduce the lodestar figure. The fact that *1223 this case was not novel or complex also supports a downward reduction of the lodestar. This was a fairly unremarkable landlord-tenant case involving a dispute over unpaid rent. Therefore, the trial court reversibly erred by failing to reduce the attorneys' fees in accordance with the Rowe factors.
The tenants also contend that the trial court erred by applying a contingency risk multiplier to the landlord's award of attorneys' fees. We agree. The Florida Supreme Court first introduced the concept of a fee multiplier in Rowe, but refined its application in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla.1990). In Quanstrom, the court stated that in contract cases,
[T]rial court[s] should consider the following factors in determining whether a multiplier is necessary: (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in Rowe are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client. Evidence of these factors must be present to justify the utilization of a multiplier.
Id. at 834. In later cases, courts have focused on the ability to obtain competent counsel when determining whether a multiplier is necessary and appropriate. See e.g., Bell v. U.S.B. Acquisition Co., Inc., 734 So.2d 403, 411 (Fla.1999) (holding that "[a] primary rationale for the contingency risk multiplier is to provide access to competent counsel for those who could not otherwise afford it"). In Progressive Express Ins. Co. v. Schultz, 948 So.2d 1027, 1032 (Fla. 5th DCA 2007), the court reversed the application of a multiplier to the fee award, finding that because the client never testified at the fee hearing, there was "nothing to suggest that he had any difficulty obtaining competent counsel."
Competent substantial evidence must exist to support an application of a contingency risk multiplier. State Farm Mut. Auto. Ins. Co. v. Cedolia, 571 So.2d 1386, 1387 (Fla. 4th DCA 1990). Here, the record does not contain competent substantial evidence to support the application of a contingency multiplier. Because the landlord did not testify at the hearing, there was no evidence to suggest that the landlord had difficulty securing competent counsel. Further, there was no evidence that the relevant market of landlords were unable to secure competent representation without the application of a contingency multiplier. Finally, as discussed above, this case was not complex, and the landlord achieved limited recovery. Thus, the Rowe factors weigh against application of a contingency multiplier, and the trial court reversibly erred in applying the multiplier.
Having concluded that the trial court reversibly erred as to both of the issues raised, we REVERSE and REMAND with instructions for the trial court to reduce the amount of the attorneys' fees award consistent with this opinion.
DAVIS and ROBERTS, JJ., concur.