RAMIREZ, C.J.
St. Paul Mercury Insurance Company appeals a jury verdict entered in favor of appellee Coconut Grove Bank based upon an insurance claim for which the insurance coverage allegedly had terminated. The bank cross-appeals the trial court’s refusal to award a contingency fee multiplier on its attorney’s fees. We affirm all issues on appeal and cross-appeal.
The bank hired Aldo Morales in the late 1980’s. In 1988, Morales’ cash drawer came up short, and he tried to hide the shortage by placing $450 of his father’s money in the drawer. Several days later, the customer who had been given an extra $450 returned the money, and the bank discovered Morales’ actions. The bank placed Morales on probation for sixty days and filed a memorandum in his employment file, in which the bank memorialized the incident.
By 1999, Morales had been promoted to assistant vice president of installment loans. He contributed to the creation of the referral program, where Morales would underwrite loans for the purchase of used ears. The used car loans portfolio grew substantially, with loan losses peaking in the middle of 2001. Late in 2001, the bank adopted a policy to address the program, whereby the bank would spot-check eight to ten dealer referral loans. The loans reviewed were all written by Morales, but the bank did not find any “bad” loans.
In February 2002, a former employee of one of the used car dealerships called the bank and reported that they were doing fake deals and provided basic information about Morales’ involvement. In the same month, the bank promoted Morales to vice president. In August 2002, the bank found some irregular transactions in an account, which the bank reserved for special situations. Morales had been using the account regularly to deposit customer checks: the checks, would be held for a few days, such that it would appear as though the payment was made, but the check was not actually clearing for a few extra days. Later in 2002, the bank discovered that Morales had manipulated data in the computer system. Morales resigned at the end of the year.
St. Paul issued a fidelity bond which was effective from March 1, 2003, through March 1, 2004, that provided for $4,500,000 in coverage for “Dishonesty of Employees.” The bank submitted a notice of claim to St. Paul on April 30, 2003. On February 9, 2004, the bank provided St. Paul with its proof of loss, in which it sought to recover for the losses it claimed to have sustained as a result of 571 purported bad loans that Morales wrote for the dealer referral program.
At trial, testimony revealed that Morales would provide loans that could not otherwise get financed in exchange for a “fee” of $500 that was not specified in the sales contract, but would be deducted from the profits of the deal. Additional testimony revealed that Morales would use false W-2 forms and complete forms with false information in order to procure the loans. A former used car dealer employee testified that Morales, “would get all the fake what we call dummy deals.”
The bank had an expert witness analyze Morales’ files at random, and he testified as to a pattern and practice of intentional misconduct. The expert first analyzed six files randomly and then pulled every tenth file in alphabetical order, for a total of fifty-three (53) out of five hundred, seventy-one (571) loan files. He opined that ninety percent (90%) of the loans he reviewed were so contrary to what any pru *454 dent lender would have done and “destined to fail” that he believed Morales intended to cause a loss to the bank. He also testified that the amounts being deposited into Morales’ bank accounts and his spending during the four-year period at issue were consistent with someone taking kickbacks.
The jury found in favor of the bank and awarded the bank $3,075,000. This resulted in a final judgment with prejudgment interest in the amount of $3,678,826.90. The trial court thereafter awarded costs to the bank of $88,826.03 and attorney’s fees of $757,563.50, plus interest accrued while the motion was pending.
St. Paul appeals on the ground that: (1) the trial court committed reversible error when it denied St. Paul’s motion for directed verdict on the issue of termination of coverage; (2) it is entitled to a new trial because the trial court failed to adequately instruct the jury on the bank’s termination of coverage defense and erroneously refused to include questions on the affirmative defenses in the verdict form; (3) the evidence is insufficient to support the jury’s verdict; and (4) the trial court erred in awarding attorney’s fees and costs to the bank.
This court reviews the trial court’s interpretation of the fidelity bond under a de novo standard. U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So.2d 871, 877 (Fla.2007). The issue of whether Morales was dishonest during the 1988 incident is an issue of fact, and the trial court correctly sent the issue to the jury for determination. There was no reversible error when the trial court allowed the jury to determine the definition of “dishonesty” since the term was not defined in the policy. In addition, based on the jury’s finding that Morales’ 1988 act was not dishonest, St. Paul cannot avoid liability for Morales’ fraudulent acts reported in April 2003. Furthermore, the extrapolation method employed to determine liability was appropriate.
We turn now to the issue involving the jury instruction. We review the trial court’s rulings on the jury instruction issue applying an abuse of discretion standard. Barbour v. Brinker Fla., Inc., 801 So.2d 953, 959 (Fla. 5th DCA 2001) (holding the denial of proposed changes to the standard instructions was not an abuse of discretion). We conclude that the trial court did not abuse its discretion when it instructed the jury and believe that the arguments raised do not merit any further discussion.
With respect to the bank’s cross-appeal, we further agree with the trial court that the bank is not entitled to recover a contingency fee multiplier. The standard of review with respect to the application of a multiplier is one of abuse of discretion. Holiday v. Nationwide Mut. Fire Ins. Co., 864 So.2d 1215, 1218 (Fla. 5th DCA 2004). Regardless of the complexity of the instant case, there is evidence that proves the bank had the ability to obtain competent counsel at an hourly rate. See Sun Bank of Ocala v. Ford, 564 So.2d 1078 (Fla.1990). The relevant market did not require a contingency fee multiplier in order to obtain competent counsel. See Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla.1990). On this basis, we conclude that the bank was not entitled to recover a contingency fee multiplier.
For the foregoing reasons, we affirm. And, we decline to address the remaining issues on appeal.
Affirmed.