# Third District Court of Appeal

## State of Florida

Opinion filed May 18, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-871
Lower Tribunal No. 18-21672
_____


**Certain Underwriters at Lloyd's London,**
Appellant,

vs.

**Roniel Candelaria and Amelia Padura,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Martin Zilber, Judge.

Sastre Saavedra & Epstein, PLLC, and Michael Sastre, for appellant.

Alvarez, Feltman, Da Silva & Costa, P.L., and Paul B. Feltman, for appellees.


Before EMAS, GORDO and BOKOR, JJ.

EMAS, J.

## I. INTRODUCTION

Certain Underwriters at Lloyd's London (Lloyd's) appeals an order awarding attorney's fees to Roniel Candelaria and Amelia Padura ("the Insureds"). Lloyd's argues that the trial court erred in establishing the lodestar amount and in applying a multiplier because neither the lodestar amount nor application of a multiplier is supported by competent substantial evidence. We agree and, for the reasons that follow, reverse and remand the trial court's order.

## II. FACTUAL BACKGROUND

In September 2017, the Insureds' home suffered damage from Hurricane Irma, and they submitted a claim with Lloyd's. Following an inspection, Lloyd's found that certain damage was not covered under the policy (e.g., wear and tear or pre-existing damage to the roof, the fence, and the shed) but that the covered damage totaled $2,033.48. Because this amount was below the deductible, Lloyd's made no payments to the Insureds, who in turn filed suit against Lloyd's in June 2018.

The case was heavily litigated prior to the November 2019 jury trial. In addition, following a failed mediation attempt, the parties continued (albeit unsuccessfully) to pursue a settlement.

The case proceeded to a five-day trial, after which the jury returned a verdict in favor of the Insureds for $52,000 (which was more than the Insureds' estimate of $41,744.40 for hurricane-related damages). Lloyd's tendered payment of the verdict amount. The Insureds then filed a motion for attorney's fees and costs pursuant to section 627.428(1), Florida Statutes (2019),[1] seeking a lodestar multiplier and prejudgment interest. Lloyd's conceded the issue of the Insureds' entitlement to reasonable attorney's fees, but contested the lodestar amount and application of any multiplier.

The trial court held an evidentiary hearing. Significantly, the Insureds' fee expert opined, in part, that "in an abundance of caution being overly conservative, I decided to cut 7.5 percent of all your hours, so that is what I am testifying to the Court." Based on this across-the-board reduction of

---

[1] That subsection provides in relevant part:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

hours, the Insureds' expert concluded that the trial court should award a lodestar amount of $372,975 based on 657.1 hours.[2] He provided no further explanation for why the billing was excessive nor did he itemize which amounts or services he found to be excessive.[3] As for the multiplier, the Insureds' expert opined that a 2.45 multiplier was appropriate because "this is the first case that I've been on that's gone to trial, and there are some issues that I have not seen before in other cases. I'm usually uber-conservative on the multiplier, and as you know, I have rejected cases where I don't think that there's multipliers that should apply. I think that a multiplier applies here, and I think it should be an aggressive multiplier." And while he acknowledged that there are other attorneys in South Florida "that do this"—i.e., represent insureds in first-party property insurance cases—he maintained that the Insureds' counsel's firm is "one of the best shops" that works in this field and that they are trial lawyers as opposed to "settlement

---

[2] Lloyd's does not challenge the reasonableness of any of the hourly rates used by the Insureds' attorneys.

[3] We note that the instant case involved the same plaintiff's counsel and the same plaintiff's attorney's fee expert as those involved in Universal Prop. & Cas. Ins. Co. v. Deshpande, 314 So. 3d 416 (Fla. 3d DCA 2020). In Deshpande (as in this case) the plaintiff's' expert arrived at his proposed lodestar amount by applying the same across-the-board cut we rejected in that case. However, this court had not yet issued its opinion in Deshpande at the time the evidentiary hearing was held in the instant case.

4

lawyers." Plaintiffs would have a "hard time," he continued, "getting some good lawyer" to take their case absent a multiplier.

In response, Lloyd's expert opined as to the lodestar amount, testifying, inter alia, that a reasonable amount of attorney's fees would have been $169,797.50 based on a total of 480.5 hours billed. Lloyd's expert undertook a side-by-side comparison of the work product and the amount of time billed and reviewed each individual time entry. He reviewed the work product, discovery conducted, and made notations on each invoice to denote entries that were problematic, such as for excessive time. He testified to the amount and reasons for each of the reductions he made for each individual attorney's billings.

Lloyd's expert also testified that a multiplier was not appropriate because there was no evidence the insureds were rejected by any other law firms, nor was there evidence presented that no other competent counsel in the South Florida community would have taken the case. As for the latter point, he listed several South Florida law firms capable of handling similar cases.

At the conclusion of the hearing, the trial court announced its ruling awarding attorney's fees based on a lodestar amount of $312,607 and applying a 1.8 multiplier for a total of $562,692 plus costs in the amount of

$44,001 for a total award of $606,693. To arrive at this amount, the trial court stated it "cut back the hours across the board by 15%." Specifically, the trial court stated at the hearing:

> *I have looked through **several of the time sheets**. I've spent some time looking at this. It was a very contested trial, but I do agree that there is some double billing, and some extra billing.*
>
> ***As a result of that**, I cut back the hours across the board by 15 percent, which is actually twice what the expert—or double the amount the [plaintiffs'] expert had advised.*

(Emphasis added). The trial court found that a 1.8 multiplier was warranted, citing the difficulty of the case.

On April 28, 2020, the Insureds submitted a proposed final order with a cover letter, which noted that Lloyd's had objections to certain aspects of the proposed order. The same day, Lloyd's submitted a letter detailing its objections to the ruling and to the Insureds' proposed order. Later that same night, the trial court signed the Insureds' proposed order verbatim; even the caption of the court's order—"ORDER AWARDING ATTORNEY FEES (PLAINTIFF'S PROPOSED)"—remained unaltered.[4] In the final order, the

---

[4] Lloyd's contends that the trial court violated its due process rights by adopting Appellees' proposed order verbatim, citing Empire World Towers, LLC v. CDR Creances, S.A.S., 89 So. 3d 1034, 1045 (Fla. 3d DCA 2012) ("In Perlow v. Berg–Perlow, 875 So. 2d 383 (Fla. 2004), the Florida Supreme Court clarified the standard governing a trial court's adoption of a party's

6

trial court awarded a total of $652,239 in attorneys' fees and costs. The trial court later denied Lloyd's motion for rehearing, and this timely appeal followed.

### III. DISCUSSION AND ANALYSIS

Both the fee award and application of a multiplier are reviewed for an abuse of discretion. Attorney's Title Ins. Fund, Inc. v. Landa-Posada, 984 So. 2d 641, 643 (Fla. 3d DCA 2008). See also St. Paul Mercury Ins. Co. v. Coconut Grove Bank, 106 So. 3d 452, 454 (Fla. 3d DCA 2009). As explained further below, the trial court abused its discretion in establishing the lodestar amount and in applying a contingency fee multiplier.

A. The Lodestar Amount

Lloyd's contends that the lodestar figure is not supported by competent substantial evidence where the Insureds' fee expert admitted during his testimony that he did not conduct a line-item analysis of the time records as

---

proposed order. The Court made clear that a party's proposed order 'cannot substitute for a thoughtful and independent analysis of the facts, issues, and law by the trial judge,' and approved of cases[] holding that reversal is required based on a trial court's adoption of a proposed order: (1) when the signed judgment is inconsistent with an earlier pronouncement of the trial judge; and (2) where the appearance of impropriety so permeated the proceeding below as to justify a suspicion of unfairness.") Although a trial court's action in signing a party's proposed order verbatim may not reflect best practices, the circumstances presented in the instant case do not rise to the level of a due process violation under Perlow and Empire World.

required, but instead simply reduced the hours billed by 7.5 percent with no proffered rationale for this reduction. Further, the trial court announced at the conclusion of the hearing that it was reducing the hours billed by an across-the-board cut of fifteen percent. As Lloyd's points out, we recently rejected this methodology in Universal Property & Casualty Insurance Co. v. Deshpande, 314 So. 3d 416 (Fla. 3d DCA 2020). See also Citizens Prop. Ins. Corp. v. Casanas, 46 Fla. L. Weekly D2324 (Fla. 3d DCA Oct. 27, 2021).

In Deshpande, this court reaffirmed the proper procedure for establishing a lodestar amount:

> In determining the amount of attorneys' fees to be awarded, a trial court is required to use the lodestar approach and consider the eight criteria set forth in Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145 (Fla. 1985). "Under Rowe, a trial court must first determine the lodestar amount, which is the number of attorney hours reasonably expended multiplied by a reasonable hourly rate." Joyce v. Federated Nat'l Ins. Co., 228 So. 3d 1122, 1126 (Fla. 2017) (citing Rowe, 472 So. 2d at 1150-51). "*The trial court must set forth **'specific findings'** as to its determination of the number of hours*, the hourly rate, and any reduction or enhancement factors." Id. (citing Rowe, 472 So. 2d at 1151).

Id. at 419 (emphasis added). In the instant case—as in Deshpande—the lodestar amount is not supported by competent substantial evidence because the trial court did not make "specific findings" as to its determination

of the number of hours and, instead, applied an arbitrary, across-the-board cut of fifteen percent.

In Deshpande, two months after the plaintiff filed suit against Lloyd's, he accepted a $25,000 proposal for settlement with an agreement to a hearing on fees. Following the hearing, the trial court adopted the plaintiff's fee expert's conclusions in every respect without explanation, e.g., applying a ten percent, across-the-board reduction and a 2.0 multiplier. As a result, the trial court awarded counsel $441,805.14 in fees on a $25,000 case that settled before trial.

The Insureds contend—and we acknowledge—that the instant case is distinguishable in that it was heavily litigated and tried over five days, whereas in Deshpande there was minimal discovery, two depositions taken, and no substantive motions or expert reports filed. Id. at 418. However, such a distinction is of no moment for purposes of this analysis, as the relevant facts are the same. Here—as in Deshpande—the Insureds' expert did not conduct a line-by-line analysis of the billing but, instead, applied an arbitrary, 7.5 percent "blanket reduction to the number of hours expended." Id. at 420. And—as in Deshpande—the trial court adopted plaintiff's expert's arbitrary methodology. Id. Indeed, in the instant case the trial court did not merely

adopt the expert's methodology, but added its own across-the-board reduction of fifteen percent.

The trial court's oral pronouncement and its findings in the order on appeal fail to satisfy the requirement that the trial court make "specific findings as to disputed time entries," "apply any particularized reductions," or "make any findings as to the appropriateness of the reductions." Id.

The trial court's comments at the conclusion of the hearing reveal that it had only examined "several" of the timesheets, as opposed to engaging in the "exceedingly painstaking and time consuming task to sort through . . . numerous time sheet entries and assess their context and amounts." Haines v. Sofia, 711 So. 2d 209, 211 (Fla. 4th DCA 1998).

Under these circumstances, the trial court's adoption of the Insureds' expert's methodology of an arbitrary, "across-the-board" reduction of fifteen percent resulted in an improper lodestar amount that is unsupported by the competent substantial evidence and fails to meet the requirement of making "particularized reductions" and/or "specific findings as to disputed time entries."[5] Compare with Lizardi v. Federated Nat'l Ins. Co., 322 So. 3d 184,

---

[5] We do not foreclose the possibility of a scenario in which the trial court may properly apply an across-the-board reduction following an examination of all the timesheets and disputed entries, where such a reduction is explained, is not arbitrary, and is supported by competent substantial evidence.

188-89 (Fla. 2d DCA 2021) ("In rendering a fee award, trial courts are required to make specific findings to support their conclusions regarding the number of hours reasonably expended, the reasonable hourly rate, and the appropriateness of the reduction or enhancement factors. . . . [W]hile the order awarding fees lists the amount of reasonably expended hours and reasonable hourly rate, there is no explanation contained therein as to how the trial court arrived at those figures") (citing Mitchell v. Mitchell, 94 So. 3d 706, 708 (Fla. 4th DCA 2012) (holding that trial court's order was insufficient under Rowe because it failed "to explain the basis for a reduction in fees which the court determined was for 'multiple lawyers on the same matter'" because the trial court needed to make a specific finding as to which work was duplicative)); cf. Forman v. Forman, 288 So. 3d 697, 698 (Fla. 4th DCA 2019) (reversing attorney's fee order: "[A]lthough the court reduced the amount of attorney's fees sought on the basis that some of the billing entries were duplicative, the court did not specify which entries were duplicative").

Finally, in both Deshpande and Casanas, this court reversed the lodestar amount with instructions to reduce the number of billed hours to "the only number for which there [was] competent, substantial evidence"—that testified to by the defendant's expert. Likewise, in the instant case the competent substantial evidence supports a proper determination of 480.5

11

hours billed at the respective hourly billing rates for each of the Insureds' individual attorneys.

B. The Contingency Risk Multiplier

Lloyd's contends that the Insureds' counsel failed to sustain its burden of presenting competent substantial evidence to support the application of a contingency risk multiplier. Though Lloyd's makes a variety of arguments, we find merit in its position that insufficient competent and substantial evidence was presented on the ability of the Insureds' counsel to mitigate the risk of nonpayment in any way.

In determining whether to apply a multiplier to a contingency fee, a trial court must consider the factors set forth in Standard Guaranty Insurance Co. v. Quanstrom, 555 So. 2d 828, 834 (Fla. 1990):

> (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) **whether the attorney was able to mitigate the risk of nonpayment in any way**; and (3) whether any of the factors set forth in Rowe are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.

(Emphasis added). See also Joyce v. Federated Nat'l Ins. Co., 228 So. 3d 1122, 1128 (Fla. 2017) (reaffirming the three-prong analysis established in Quanstrom). Importantly, "evidence of each of these factors must be

presented to justify the utilization of a multiplier." <u>Quanstrom</u>, 555 So. 2d at 834.

The issue here centers on the second prong: whether counsel for the Insureds "was able to mitigate the risk of nonpayment in any way." We conclude the Insureds failed to present competent substantial evidence to support this prong.

It is undisputed that the Insureds entered into a contingency fee agreement with their counsel. However, other than the existence of a contingency fee agreement, no competent substantial evidence was presented regarding counsel's ability to mitigate the risk of nonpayment.[6] And as the Florida Supreme Court has observed:

> A primary rationale for the contingency risk multiplier is to provide access to competent counsel for those who could not otherwise afford it. . . . [W]e find that the primary policy that favors the consideration of the multiplier is that it assists parties with legitimate causes of action or defenses in obtaining competent legal representation even if they are unable to pay an attorney on an hourly basis.

<u>Bell v. U.S.B. Acquisition Co</u>., 734 So. 2d 403, 411 (Fla. 1999) (citing <u>Rowe</u>, 472 So. 2d at 1151). "Generally, the controlling consideration in determining

---

[6] In addition, "the existence of a contingent-fee agreement between attorney and client does not automatically require application of a multiplier." <u>Sun Bank of Ocala v. Ford</u>, 564 So. 2d 1078, 1079 (Fla. 1990). <u>See also</u> <u>Bell v. U.S.B. Acquisition Co.</u>, 734 So. 2d 403, 411 (Fla. 1999).

13

whether an attorney can mitigate the risk of nonpayment under the second prong of <u>Joyce</u> is whether the plaintiffs can afford a retainer or hourly fees." <u>Wesson v. Fla. Peninsula Ins. Co.</u>, 296 So. 3d 572, 573 (Fla. 1st DCA 2020) (citing <u>Joyce</u>, 228 So. 3d at 1125 ("The court relied on testimony from the Joyces' attorney that the Joyces told her they could not pay a retainer, as well as testimony from the Joyces' fee expert that there was no meaningful way to have mitigated the risk of nonpayment in this case")). <u>See, e.g.,</u> <u>Eckhardt v. 424 Hintze Mgmt., LLC</u>, 969 So. 2d 1219, 1221 (Fla. 1st DCA 2007) ("Hayter testified that he was hired by the landlord to collect on a lease. He testified that he had initially requested the landlord to pay an hourly fee, but that the landlord could not afford the hourly fee so they entered into a contingency fee agreement.")

The only relevant evidence introduced regarding whether counsel was able to mitigate the risk of nonpayment in any way was that the client was a "blue-collar guy" with minimal education; the firm had no prior history with the client; and, because the client entered into a contingency fee agreement, counsel would not have collected his fees had the client lost.[7]

---

[7] The expert's opinion—that there was "no way" the firm could have mitigated the risk of nonpayment— is conclusory, and fails to fully address the second <u>Quanstrom</u> factor, which requires the court to consider "whether the attorney was able to mitigate the risk of nonpayment ***in any way***," including whether the plaintiffs could afford a retainer or hourly fees. <u>Wesson v. Fla. Peninsula</u>

We hold that because the evidence and testimony presented at the evidentiary hearing wholly failed to address whether "the plaintiffs [could] afford a retainer or hourly fees," Wesson, 296 So. 3d at 573, the Insureds failed to present competent substantial evidence as to "whether the attorney was able to mitigate the risk of nonpayment in any way." Quanstrom, 555 So. 2d at 834. Indeed, the trial court's order addressing this second Quanstrom factor consists of a single sentence: "Given the circumstances of the case and nature of the fee arrangement, there was no way to mitigate the risk of nonpayment."

---

Ins. Co., 296 So. 3d 572, 573 (Fla. 1st DCA 2020). Because no evidence was presented on the clients' ability to afford a retainer or hourly fee, the expert's opinion in this regard was not based on facts or inferences supported by evidence presented at the hearing:

> It is elementary that the conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value. It is equally well settled that the basis for a conclusion cannot be deduced or inferred from the conclusion itself. The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion.

Mount Sinai Med. Ctr. of Greater Miami, Inc. v. Gonzalez, 98 So. 3d 1198, 1202 (Fla. 3d DCA 2012) (quoting Arkin Constr. Co. v. Simpkins, 99 So. 2d 557, 561 (Fla. 1957)).

## IV. CONCLUSION

The trial court erred in its determination of the lodestar amount, as such an award was not supported by competent substantial evidence and involved an arbitrary, across-the-board cut, indistinguishable in all relevant respects from this court's recent decisions in Deshpande and Casanas. The trial court further erred in applying a contingency risk multiplier in the absence of competent substantial evidence to address whether the attorney was able to mitigate the risk of nonpayment in any way—specifically, whether the client could afford to pay a retainer or hourly fees.

We reverse the lodestar amount and application of a multiplier, with instructions for the trial court to reduce the number of hours billed to 480.5— "the only number for which there is competent, substantial evidence adduced by the defendant's fee expert following a line-by-line accounting of the compensable hours." Casanas, 46 Fla. L. Weekly D2324 at *1.[8] See also Deshpande, 314 So. 3d at 420 ("Generally, when an attorney's fee or cost order is appealed and the record on appeal is devoid of competent

---

[8] Because Lloyd's did not contest the reasonableness of the hourly billing rates for each of the Insureds' attorneys, the trial court shall apply the attorneys' respective hourly rates set forth in the order on appeal.

16

substantial evidence to support the order, the appellate court will reverse the award without remand.") (quotation omitted).[9]

Reversed and remanded with directions and for further proceedings consistent with this opinion.

---

[9] By contrast, in <u>Wesson v. Fla. Peninsula Ins. Co</u>, 296 So. 3d 572 (Fla. 1st DCA 2020), our sister court reversed and remanded for the trial court's proper consideration of the second <u>Quanstrom</u> prong because it was the result of the trial court's error in relying on improper considerations in determining whether plaintiffs could afford to pay a retainer or hourly fee. <u>Wesson</u>, 296 So. 3d at 573. However, where the reversal is the result not of trial court error, but a party's failure to meet its evidentiary burden, a remand to allow for a "second bite of the apple" is generally not permitted. <u>See, e.g.</u>, <u>Levy v. Ben Shmuel</u>, 255 So. 3d 493, 497 n. 4 (Fla. 3d DCA 2018) (en banc) (noting that, as a general rule, a party's failure to meet its evidentiary burden will not be afforded a "second bite of the apple" on remand following appeal, and recognizing an exception where the party's failure to meet its burden was the result of judicial error), and cases cited.